TRINA A. HIGGINS, United States Attorney (#7349)
ALLISON H. BEHRENS, Assistant United States Attorney (#38482MO)
Attorneys for the United States of America
Office of the United States Attorney
111 South Main Street, Suite 1800
Salt Lake City, Utah 84111-2176
Telephone: (801) 524-5682

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| UNITED STATES OF AMERICA, | : | |
|---|---|---|
| | : | UNITED STATES' STATEMENT |
| Plaintiff, | : | OF NO OBJECTION TO THE PSR |
| | : | AND POSITION WITH RESPECT |
| vs. | : | TO 3353(a) SENTENCING |
| | : | FACTORS |
| JAMES WESTON FAWCETT, | : | |
| | : | 2:23 CR 00092 TS |
| Defendant. | : | |
| | : | Honorable Judge Ted Stewart |

COMES NOW the United States of America, by and through Trina A. Higgins, United States Attorney for the District of Utah, and Allison H. Behrens, Assistant U.S. Attorney for said District, and: (1) states that it has no objections to the Presentence Investigation Report ("PSR"); and (2) requests a sentence of 168 months, the low end of the applicable guideline range.

1

# I.
# STATEMENT OF FACTS

An agent with Homeland Security ("HSI") was acting in an undercover capacity on a web platform. He was monitoring a chatroom called "Young girls" when he observed user "famxxx1987@gmail.com," later identified as the defendant James Weston Fawcett ("Defendant"), post images and videos of Child Pornography ("CP") on multiple occasions.

On December 8, 2022, and December 9, 2022, Defendant posted seven videos and four images of CP to the platform. Between January 10, 2023, and January 15, 2023, Defendant posted 11 videos and seven images of CP. He also uploaded a video with the file name "Converter.mp4" to the platform, glorifying pedophilia and the sexualization of children.

In addition to the above, Defendant made several posts about his sexual interest in children. A number of these posts focused on his 9-year-old niece and how he would like to make videos with her. In those posts, he described himself as a "pedo uncle" and discussed ejaculating to thoughts of his niece. In a private chat with UC, Defendant sent UC three photos of clothed girls, approximately 6 to 9 years old and said they were his niece. During that same chat, he shared his plan to sexually abuse the child on January 28, 2023. He said she would be attending a gymnastics meet that day with his niece and had purchased the tickets. Independent investigation confirmed that Defendant actually had

purchased three tickets to the University of Utah v. Washington Huskies gymnastics meet on January 28, 2023.

Law enforcement officers obtained a search warrant for Defendant's residence and for his person. The search warrants were executed on January 26, 2023. An iPhone 11 seized from Defendant's person. From his residence, iPhone 7 Plus, iPad Pro 5th Gen, DVD, desktop computer and flash drives were seized.

A forensic examination revealed thousands of images of CP on the electronic devices. There was also an image of CP where Defendant had superimposed his face on the male in the image and superimposed his niece's face on the child in the image. During the search of Defendant's bedroom, officers found several pairs of dirty girl's underwear. Defendant admitted to taking the underwear from his niece's residence.

Defendant was interviewed and admitted to the conduct.

## II.
## PROCEDURAL HISTORY

As a result of the above-described conduct, a federal grand jury sitting in Salt Lake City, Utah, returned a two-count indictment against Defendant on March 8, 2023. In the first count, the Grand Jury charged that Defendant possessed images of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). In Count 2, the Grand Jury charged that Defendant distributed images of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A), (B), (b)(1).

The Court appointed Assistant Federal Public Defender Benjamin Hamilton to represent Defendant. District Court Docket ("DCD") 9. On May 24, 2023, attorney Gregory Smith was retained by Defendant and entered his appearance. DCD 15.

Defendant entered a plea of guilty to Count 2 of the Indictment on October 12, 2023, pursuant to a written plea agreement. DCD 25. The terms of plea agreement, in pertinent part, were: (1) Defendant would plead to Count 2; (2) the Government would dismiss Count 1 at the time of sentencing; (3) the Government would recommend the low-end of the applicable guideline range; (4) Defendant could ask for whatever sentence he wanted; and (5) Defendant waived his right to appeal. DCD 27. The Court also entered an order for a psychosexual exam as to Defendant. DCD 29. Sentencing was set for February 20, 2024.

Thereafter, Defendant became dissatisfied with this retained counsel. Therefore, he filed a motion to withdraw his counsel. DCD 38. The Court granted that motion on February 22, 2024, and re-appointed Mr. Hamilton to represent Defendant. DCD 42, 43.

Mr. Hamilton expressed concern about the appellate waiver in the plea agreement. Following discussions, the parties agreed that Defendant could retain his appellate rights. Despite that, the United States abides by its representation that it will request a sentence at the low-end of the applicable guideline range.

## III.
## PRESENTENCE INVESTIGATION REPORT

The United States Probation Office ("USPO") prepared a PSR that was filed with the Court on April 29, 2024. DCD 50. The PSR notes that the Base Offense Level under the United States Sentencing Guidelines ("USSG") for a violation under 18 U.S.C. § 2252A(a)(2)(A) is 22. *See* PSR ¶ 30; USSG § 2G2.2. To this, two levels are added pursuant to USSG § 2G2.2(b)(2) because the material involved a prepubescent minor or a minor who had not attained the age of 12 years. PSR ¶ 31. Two levels are added pursuant to USSG § 2G2.2(b)(3)(F) because Defendant "knowing engaged in distribution." PSR ¶ 32. In addition, four levels are added under § 2G2.2(b)(4)(A) because the offense involved material that portrays sadistic or masochistic conduct or other depictions of violence. PSR ¶ 33. Two levels are added under § 2G2.2(b)(6) as the offense involved the use of a computer, and five levels are added under § 2G2.2(b)(7)(D) because the offense involved 600 or ore images. PSR ¶¶ 34-35. Allowing for a three-level reduction for acceptance of responsibility, the Total Offense Level is 34. PSR ¶¶ 41-43.

The PSR also addresses Defendant's Criminal History, finding that Defendant has two criminal history points. PSR ¶ 59. Thus, Defendant's criminal history category is II. PSR ¶ 60.

Based upon a Total Offense Level of 34 and a Criminal History Category II, the applicable advisory guideline range is 168 months to 210 months. PSR ¶ 95. The United States has no objections to the PSR calculations and, for the reasons set forth below,

requests a sentence at the low end of the applicable guidelines range (here, 168 months), consistent with the Statement in Advance of Plea.

## IV.
## RELEVANT LAW

In determining the particular sentence to be imposed, the Court is to consider several factors set forth in 18 U.S.C. § 3553(a): (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed a) to reflect the seriousness of the offense, b) to afford adequate deterrence to criminal conduct, c) to protect the public from further crimes of the defendant, and d) to provide the defendant with needed training, medical care or other treatment; (3) the kinds of the sentences available; (4) the kinds of sentences and the sentencing range established for that particular crime; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who had been found guilty of similar conduct; and (7) the need to provide restitution to any victims in the case. 18 U.S.C. § 3553(a). *See also United States v. Barnes*, 890 F.3d 910, 915 (10th Cir. 2018).

When imposing sentences, a district court "should engage in a holistic inquiry of the § 3553(a) factors." *United States v. Lente*, 759 F.3d 1149, 1174 (10th Cir. 2014). However, while the court should not focus on only one factor, it need not give equal weight to each of the § 3553(a) factors. *United States v. Cookson*, 922 F.3d 1079, 1094 (10th Cir. 2019). Moreover, while consideration of the Guidelines is but one factor

enumerated in § 3553(a), both the Supreme Court and the Tenth Circuit Court of Appeals have opined that the Guidelines are entitled to careful consideration. *Rita v. United States*, 551 U.S. 338, 349 (2007); *United States v. Cage*, 451 F.3d 585, 593 (10th Cir. 2006) (describing the Guidelines as more than "just one factor among many").

## V.
## A 168-MONTH TERM OF IMPRISONMENT IS THE APPROPRIATE SENTENCE IN THIS CASE

The Guidelines in this case recommend a sentence of 168 to 210, with a mandatory minimum sentence of 60 months. In the Statement in Advance of Plea, the United States agreed to recommend the low-end of the applicable guideline range. A 168-month term of imprisonment is an appropriate sentence in this case, particularly given the nature and circumstances of the offense, the Defendant's history and characteristics, and the need for the sentence imposed to reflect the seriousness of the crime, promote respect for the law, and provide just punishment for the offense.

### A.     Nature and Circumstances of the Offense

The nature and circumstances of the offense are quite troubling. Defendant had been frequenting social media platforms geared toward pedophiles. On December 8, 2022, he uploaded four videos and four images in a chatroom titled "Young Girls." On that same day, he made numerous comments. He stated, "If it's so wrong then why does child pussy look so good, fresh and tasty." He also stated, "I still remember the first time I stared at my niece's bald little pussy it was the sexiest lips I'd ever seen." He additionally

commented that he wanted to make videos with his nine-year-old niece. On December 9, 2022, he uploaded four videos of CP into the "Young girls" chatroom.

On January 10, 2023, he uploaded ten videos of CP and three images of CP to another chatroom titled "My Fam." His comments in the chatroom that day included, "I shot an amazing load this evening while getting pedo encouragement about my niece. The kind of load that makes you wish you recorded it." He said, "I like those elementary school aged girls 6-12," and asked if "Anyone [was] around to chat with a pedo uncle who is ready to take things further?"

On January 12, 2023, Defendant uploaded more CP in the "MyFam" chatroom. He also commented, "I got a niece who so far hasn't talked about the things we've done and she is nearly 10 now." He also stated, "I've got an itch that I'm dying to scratch that involves my 9yr niece."

On January 12, 2023, Defendant also communicated with the UC in a private chat. Defendant stated that his eight-year-old niece was going to stay at his apartment the night of January 28, 2023, at which time he planned to sexually abuse her. During the chat, Defendant stated that he had told his niece "to grab her feet and show me a good view of her pussy." He stated he had not yet decided whether to take pictures of videos of the sexual abuse.

On January 15, 2023, Defendant uploaded five CP images into the "My Fam" chatroom, and made the following statement: "I've down loaded a tool to remove my

pictures meta data but I'd love a 'Fool proof' method cause for the first time in over a year I'm gonna get my niece all alone at the end of the month and I've promised to show her how I make cream (Cum) and I wanna record the whole thing."

A review of Defendant's electronic devices revealed thousands of images of CP. One of those images depicts a prepubescent female, age 5-7, being anally raped by a man. In one image of CP, Defendant had superimposed his face on the male in the picture and superimposed his niece's face on the child in the picture.

In summary, Defendant 1) uploaded images of CP to chatrooms for others to see, thus perpetuating the victimization of these young girls; 2) possessed thousands of images and videos of CP, including images of five-year-old girls getting anally raped by adult males; 3) made repulsive comments on the social media platforms, to include masturbating to images/thoughts of his young nieces; (4) superimposed his face on the man in an image of CP and his niece's face on the girl in that same image; 5) tried to arranged to have his niece stay with him on January 28, 2023, so that he could sexually abuse her; and (6) stole his niece's dirty underwear from her residence and kept them in his bedroom.  These are the nature and circumstances of this offense.  These are the nature and circumstances that warrant a 168-month sentence.

**B.     History and Characteristics of the Defendant**

Defendant's sexual deviance first revealed itself when he engaged in inappropriate sex acts with a young family member ("V") when he was 12 and V was 8.  Now, 30 years

later, it continues to reveal itself in this 42-year-old man who is sexually attracted to his very young niece. So attracted to her that he was planning to sexually molest her after taking her to a university gymnastics meet. So attracted to her that he masturbates to thoughts and images of her. So attracted to her that he steals her underwear. Thirty years of sexual deviance. Thirty years of incredibly concerning behavior.

Defendant has filed a letter from his mother for the Court's consideration. In that letter, Defendant's mother is quite vicious in her attack of V. Defendant's mother states V is fabricating the sexual abuse by Defendant, a baffling statement considering Defendant admitted that very conduct to the Psychosexual examiner. Moreover, Defendant's statement regarding his sexual abuse of V is consistent with V's statement in his/her victim impact statement.

The mother states in her letter that, "[l]ooking back, I can see that [V] never took responsibility for her choices or anything bad that happened in her life." Yet, Defendant's mother is essentially ignoring that very same conduct in her son. Relevant here, the Psychosexual examiner reported the following:

> In the interview, Mr. Fawcett minimized the sexual abuse of [V] and the likelihood that he would have sexually abused his his [sic] niece. There was also no recognition of the seriousness of the harm he caused [V] by sexually abusing her. Further, the regret Mr. Fawcett expressed about his current offense in the interview was for the negative impact on his life, not for having engaged in sexually inappropriate, harmful and illegal behavior. These factors may interfere with his ability to effectively engage in the treatment process, increase the difficulty of making therapeutic changes and indicate a greater likelihood of re-offending.

Psychosexual Report at p. 8-9.

Defendant's history and characteristics, including primarily those just discussed, support a sentence at the bottom of the applicable guideline range.

### C.     The Need to Protect the Public

In determining an appropriate sentence, the Court is to consider the need for the sentence imposed a) to reflect the seriousness of the offense, b) to afford adequate deterrence to criminal conduct, c) to protect the public from further crimes of the defendant, and d) to provide the defendant with needed training, medical care or other treatment.

A sentence of 168 months, which is the bottom of the applicable guideline range, would reflect the seriousness of the offense.  The sentence would afford adequate deterrence to criminal conduct. And the sentence would provide the opportunity for Defendant to obtain the necessary sex offender treatment he desperately needs.

Finally, the sentence would protect the public from further crimes of Defendant. As noted in the Psychosexual report, Defendant is a danger to the public:

> Although Mr. Fawcett admitted to sexually abusing [V] when he was a teenager, because he was not convicted of a sex offense for these behaviors, risk assessment instruments such as the Static-99R cannot be used.  Nevertheless, his history of having committed these sex offenses indicates that he is at greater risk of sexually abusing a child in the future than a convicted child pornography offender who has not committed a hands-on sex offense. Typically, child pornography offenders are less likely to re-offend sexually than contact sex offenders. This is not the case for Mr. Fawcett. Further, the fact that he has sexually abused a child, viewed a substantial amount of child

pornography, and expressed his intent to sexually abuse his niece raises a question as to whether he would have done so, had he not been caught for his current offense.

DCD at p. 7-8.

The report further stated:

The research indicates that individuals who have sexually molested a child and committed a separate child pornography offense are at significantly greater risk to re-offend sexually. Thus, Mr. Fawcett is not an appropriate candidate for placement in the community.

Psychosexual Report at p. 9.

### D.   The Sentencing Range Establish for this Crime

Another factor the Court should consider is the sentencing range established for the crime.[1] Here, the PSR sets forth the correct guideline calculation: 168-235 months. The United States is requesting a sentence at the bottom of that guideline range.

## VI.
## CONCLUSION

Based upon the sentencing factors set forth in 18 U.S.C. § 3553(a), and for the reasons stated above, the Government believes that a sentence of 168 months is appropriate in this case. Such a sentence is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a).

---

[1] Nine pages of Defendant's 12-page memorandum objecting to the PSR challenge the validity of the sentencing guidelines for sex offenders, claiming that they do not comply with the Sentencing Commission's mandate. This argument has been repeatedly rejected by the courts. Thus, the United States will not address that argument here.

WHEREFORE, for the reasons stated, the United States respectfully requests that the Court impose a sentence of 168 months' imprisonment in this case.

TRINA A. HIGGINS
United States Attorney

/s/ *Allison H. Behrens*
ALLISON H. BEHRENS
Assistant United States Attorney